```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF OKLAHOMA

KAREN GAYLE MASHORE,              )
                                  )
          Plaintiff,              )
                                  )
v.                                )    Case No. CIV-13-010-FHS-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
          Defendant.              )
```

## REPORT AND RECOMMENDATION

Plaintiff Karen Gayle Mashore (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 17, 1958 and was 53 years old at the time of the ALJ's decision. Claimant completed her high school education and attended real estate licensure classes. Claimant has worked in the past as a realtor and bookkeeper. Claimant alleges an inability to work beginning December 1, 2009 due to limitations resulting from vision loss, back pain, and bipolar disorder with

3

depression and anxiety.

**Procedural History**

On January 22, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 5, 2010, an administrative hearing was held before Administrative Law Judge ("ALJ") Douglas S. Stults. On June 20, 2011, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on November 9, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step two of the sequential evaluation. He determined that while Claimant suffered from medically determinable impairments, they did not significantly limit Claimant's ability to engage in basic work activities.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly apply Soc. Sec. R. 83-20; and (2) finding Claimant did not have a severe visual impairment prior to her date last insured.

4

## Application of Soc. Sec. R. 83-20

In his decision, the ALJ determined Claimant suffered from the medically determinable impairments of adjustment disorder with anxiety, an April 2010 right fibula fracture, and left amlyopia. (Tr. 15). He concluded, however, that Claimant's impairments, considered singly and in combination, did not significantly limit Claimant's ability to perform basic work activities through her date of last insurance. (Tr. 20).

Claimant first contends the ALJ failed to properly apply Soc. Sec. R. 83-20 with regard to Claimant's mental impairment. On March 20, 2010, Claimant underwent a mental status examination with Dr. Beth Teegarden. Claimant reported anxiety and poor eyesight. Dr. Teegarden diagnosed Claimant with adjustment disorder with anxiety. However, she found Claimant demonstrated a good ability to deal with the public as evidenced by her ability to interact with supervisors and co-workers. Dr. Teegarden stated Claimant was able to meet the demands of the work environment both emotionally and psychologically. Claimant also evidenced the ability to understand, remember and carry out simple and complex directions. (Tr. 224-26).

Claimant's date of last insured was June 30, 2010. (Tr. 130). On August 19, 2010, Claimant reported to the Mental Health and

5

Substance Abuse Centers of Southern Oklahoma complaining of depression. She stated that she had been diagnosed as bipolar years ago with very bad mood swings. Claimant reported thoughts of hurting herself, very extreme highs and lows, and serious anxiety and tension. Claimant stated that she had been taking Valium and Cymbalta for her condition. (Tr. 314). Claimant also stated she had trouble sleeping and her mind raced. (Tr. 317).

On September 16, 2010, Claimant's husband reported that Claimant's mood was more even. Claimant, however, stated she did not feel much different, asserting her mind raced at night and her chest would get tight. (Tr. 311).

On September 26, 2010, Claimant was admitted to Red Rock Behavioral Health Services under an Emergency Order of Detention, threatening suicide with pills. She reported manic episodes with insomnia and depression. She also stated that she had racing thoughts, nightmares and anxiety, distrust of family and friends, significant periods of depression, anxiety, or tension, and hallucinations. Claimant reported that these symptoms began when her daughter-in-law and granddaughter were killed in a motor vehicle accident three years prior. (Tr. 265). Claimant was found to have a depressed mood with sadness. (Tr. 266).

Claimant stayed at Red Rock for four days during which time

she was noted to have diminished, slow, and pressured speech, a depressed mood, a constricted, tearful, and anxious affect, poor judgment, trouble thinking clearly, experiencing pessimism, and a belief that she and others around her should be perfect. Claimant made some improvement and was discharged with medication. (Tr. 262-64, 270-72, 274-75).

On October 1, 2010, Claimant was assessed at APS Healthcare. Claimant was found to have problems in the area of Feeling/Mood/Affect in mood lability, coping skills, depression, anger, anxiety, euphoria, and a change in appetite/sleep patterns. Claimant also experienced problems in Thinking/Mental Status with memory, cognitive process, concentration, judgment, obsessions, belief system and impulse control. (Tr. 306). Claimant was diagnosed with bipolar I disorder, single manic episode - severe, without mention of psychosis. Her GAF was estimated at 46. Claimant's CAR scores indicated moderate to severe limitations in the areas of feeling/mood/affect, thinking mental processes, interpersonal, role performance, and self care/basic needs. (Tr. 308).

Claimant continued experiencing problems with depression, fatigue, insomnia, medication side effects, and social isolation in October, November, and December of 2010 visits to Dr. Steven

7

Hutchins.  (Tr. 285-292, 297-302).

On January 13, 2011, Dr. Baker Fore wrote a "To Whom It May Concern" letter, stating he had known Claimant for "many years." He specifically stated that she was bipolar and that he had become acquainted with her in the late '90's or early 2000.  He supplied Claimant with antidepressant sample medication during this time and later when he treated her in 2010.  Dr. Fore concludes that Claimant "is completely unable to adjust to the work place and is permanently disabled."  Her prognosis was considered poor with Dr. Fore opining that Claimant's physical and mental condition would deteriorate over the years.  (Tr. 320).

On January 31, 2011, social worker Evelyn Southers completed a Mental Residual Functional Capacity Assessment form on Claimant. She reported Claimant was markedly limited in the areas of carrying out very short and simple instructions, carrying out detailed instructions, maintaining extended periods of attention and concentration, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, interacting with the general public, accepting instructions and responding

8

appropriately to criticism from supervisors, responding appropriately to work setting changes, and traveling in unfamiliar places or using public transportation. (Tr. 325-28). Claimant was found to be moderately limited in an additional 9 functional areas. Id. Ms. Southers concluded Claimant experienced severe impairment with her capacity to focus, concentrate, complete tasks, and follow directions. Claimant's loss of her daughter-in-law and grandson created and exacerbated unmanageable symptoms which pervaded all aspects of her life. (Tr. 329).

In February of 2010, Claimant was noted to have problems with concentration when filling out the application with a state agency interviewer. (Tr. 140).

In January of 2011, Claimant, Claimant's husband, brother, and parents submitted correspondence which stated Claimant had coped with her depression for many years but that she did not want to be stereotyped like her sister had who also suffered from the condition. The family kept Claimant's condition quiet for a number of years because Claimant was ashamed of it. (Tr. 199-202).

Soc. Sec. R. 83-20 provides, in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e, be decided on medical grounds alone) before onset can be established.
>
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

"In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Soc. Sec. R. 83-20. In determining the onset date of a disability, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." Potter v. Sec. of Health & Human Servs., 905 F.2d 1346,1348-49 (10th Cir. 1990). If the onset date of a disability must be inferred, the ALJ should consult a medical advisor. Soc. Sec. R. 83-20. The necessity to engage the services of a medical advisor, however, only arises if the medical evidence of onset is ambiguous. Blea v. Barnhart, 466 F.3d 903, 910 (10th Cir. 2006).

While it is often easier to determine the onset date to be the date of diagnosis, "only in the rarest of cases is a person's disabling condition diagnosed on the day it begins." McClellan v.

Apfel, 2000 WL 433094, 9 (D. Kan.). This is particularly true of a mental impairment, which is often not diagnosed right away precisely because the impairment itself interferes with the claimant's awareness of the cause of her difficulties. Id. citing Morrison v. Bowen, 738 F.Supp. 1351 (D. Kan. 1987).

The ALJ agreed with Claimant that the evidence of record demonstrated her mental impairment worsened after Claimant's date last insured. Given the evidence of Claimant's attempt to hide her condition, her worsening mental status very near to the date of last insured, and conflicting evidence concerning when her condition became debilitating, this Court finds the ALJ should have employed the services of a medical advisor to ascertain whether Claimant's mental condition constituted a severe impairment prior to the expiration of the date last insured. The case will be remanded for the ALJ to do so.

**Visual Impairment**

Claimant complained that her loss of visual acuity was causing problems with her job performance as early as March 28, 2007. (Tr. 210). Claimant's state agency interviewer also reported Claimant was having problems reading the application for benefits in February of 2010. (Tr. 140-41). Dr. David Brinker found Claimant was experiencing high myopia retinal changes which could not be

restored with surgery.  (Tr. 230).  Third party statements and statements from Claimant also included severe limitations in Claimant's ability to see and read.  (Tr. 154, 163, 166).  The ALJ did not discuss this evidence.  With the degree of visual degradation documented in the record, the ALJ's step two findings should be revisited on remand to determine whether Claimant meets the minimal showing of a severe impairment.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 11th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE